UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| BRUCE L. PENNINGTON, II, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO. 3:14-CV-1628-CAN |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

On June 11, 2014, Plaintiff Bruce L. Pennington, II ("Pennington") filed his complaint in this Court seeking reversal or remand of Defendant Acting Commissioner of Social Security's ("Commissioner") final decision denying his application for disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Doc. No. 1). On October 31, 2014, Pennington filed Plaintiff's Memorandum of Law in Support of a Social Security Appeal. (Doc. No. 16). On February 6, 2015, the Commissioner filed a response requesting that the Court affirm the Commissioner's decision. (Doc. No. 22). Pennington filed a reply brief on February 20, 2015. (Doc. No. 23). This Court may enter a ruling in this matter based on the parties' consent. 28 U.S.C. § 636(c); 42 U.S.C. § 405(g).

I. **RELEVANT BACKGROUND**

On November 6, 2011, Pennington filed an application for Title II DIB with the Social Security Administration ("SSA") alleging disability beginning November 1, 2011. Pennington subsequently filed an application for Title XVI SSI on December 12, 2011. After the SSA denied Pennington's application initially and upon reconsideration, an administrative law judge

("ALJ") held a hearing regarding Pennington's application on March 8, 2013.

Pennington was born on August 8, 1963, making him a forty-eight-year-old male at the alleged disability onset date. (Doc. No. 13 at 149). Pennington completed one year of college and is divorced. (Doc. No. 13 at 150, 183). Pennington has a substantial work history, including work as a server at Lindos Restaurant immediately prior to the alleged onset date. (Doc. No. 13 at 164-66). At his hearing before the ALJ, Pennington alleged that he suffered from degenerative disc disease, a herniated disc, chronic obstructive pulmonary disease ("COPD"), asthma, pulmonary fibrotic cysts, and hypertension. (Doc. No. 13 at 48). Pennington provided the ALJ with medical evidence from 2009 to the date of the hearing, March 8, 2013, that documented his medical treatment, including visits to his treating physician, Dr. Vidya Kora. (Doc. No. 13 at 218-343, 362-433, 446-544). The medical evidence and opinions show repeated visits and treatment for pulmonary and back issues. (Doc. No. 13 at 23).

After the hearing, the ALJ issued a written decision reflecting the following findings based on the five-step disability evaluation prescribed in the SSA's regulations.[1] (Doc. No. 13 at 20-31). At Step One, the ALJ found that Pennington had not engaged in substantial gainful activity since November 1, 2011, the alleged onset date. (Doc. No. 13 at 22). At Step Two, the ALJ found that Pennington had the following severe impairments: degenerative disc disease, COPD, and emphysema. (Doc. No. 13 at 23). At Step Three, the ALJ found that Pennington's impairments did not meet or medically equal the severity of a listed impairment. (Doc. No. 13 at 24). Before proceeding to Step Four, the ALJ determined that Pennington had the residual

---

[1] *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001); *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

functional capacity ("RFC") to perform light work, except that he:

> Is able to lift up to 20 pounds occasionally and up to 10 pounds frequently, stand and/or walk up to 6 hours in an 8-hour workday and sit up to 6 hours in an 8-hour workday. He is never to climb ladders, ropes or scaffolds, but can occasionally climb ramps and stairs, and balance, stoop, kneel, crouch and crawl. He is to avoid concentrated exposure to extreme temperatures of cold and heat, as well as noise and breathing irritants, such as fumes, odors, dusts, gases and poorly ventilated areas.

(Doc. No. 13 at 25).

At Step Four, the ALJ found that Pennington was capable of performing past relevant work as a server, despite the limitations included in the RFC. (Doc. No. 13 at 29). At Step Five, the ALJ considered Pennington's age, education, work experience, and RFC and determined that as of November 1, 2011, Pennington was able to perform a significant number of jobs in the national economy, including order clerk and information clerk. (Doc. No. 13 at 31).

Based on these findings, the ALJ determined in his written decision, issued on April 23, 2013, that Pennington had not been under a disability from November 1, 2011. (Doc. No. 13 at 31). Pennington requested that the Appeals Council review the ALJ's decision, and on April 8, 2014, the Appeals Council denied review of the ALJ's decision, making it the Commissioner's final decision. *See Fast v. Barnhart*, 397 F.3d 468, 470 (7th Cir. 2005); 20 C.F.R. § 404.981.

## II. ANALYSIS

### A. Issues Presented for Review

In his opening brief, Pennington seeks reversal and remand of the ALJ's decision, arguing that: (1) the RFC is unsupported by substantial evidence because the ALJ failed to properly weigh the opinion of Pennington's treating physician; (2) the ALJ's credibility determination was not supported by substantial evidence; and (3) the ALJ's Step Four and Step

3

Five determination was not supported by substantial evidence because the Vocational Expert's ("VE") testimony was based on an incomplete hypothetical question.

A district court reviews the administrative record to determine whether the ALJ used the correct legal standards and the decision is supported by substantial evidence. *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013). The reviewing court does not reconsider facts, re-weigh the evidence, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005). An ALJ must "build an accurate and logical bridge from the evidence to [his] conclusion so that [the reviewing court] may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles ex rel. Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007).

> 1. <u>The RFC is unsupported by substantial evidence because the ALJ failed to properly weigh the opinion of Pennington's treating physician.</u>

Pennington argues that in determining his RFC, the ALJ erred in evaluating the opinion of Dr. Kora, Pennington's treating physician. Pennington alleges that the ALJ's rationale for giving Dr. Kora's opinion "only some weight," rather than controlling weight or great weight, was conclusory and unsupported by the evidence. Pennington contends that the ALJ failed to consider the series of factors outlined in the SSA regulations before determining that his treating physician's opinion should not be given controlling weight. On the other hand, the Commissioner argues that the ALJ considered Dr. Kora's opinion, appropriately gave it some weight, and met the minimal articulation standard required by case law in stating his reasons for his finding.

A treating source's opinion is entitled to controlling weight when it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with

the other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2).[2] The ALJ must provide a sound explanation for refusing to give controlling weight to a treating physician's opinion. *Id.*; *Roddy*, 705 F.3d at 636; *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). The ALJ must also adequately articulate his analysis so that a reviewing court can follow the his reasoning. *Minnick v. Colvin*, 775 F.3d 929, 938 (7th Cir. 2015).

The ALJ is required by regulation to consider certain factors when deciding how much weight to give the treating physician's opinion, including: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) whether the physician's opinion was supported by relevant medical evidence; (4) the opinion's consistency with the record as a whole; and (5) whether the treating physician was a specialist in the relevant area. 20 C.F.R. § 404.1527(c)(2)-(5); *Scrogham v. Colvin*, 765 F.3d 685, 697 (7th Cir. 2014). When the ALJ assigns less than controlling weight to the physician's opinion after considering these factors, a reviewing court "must allow that decision to stand so long as the ALJ minimally articulated his reasons—a very deferential standard that we have, in fact, deemed lax." *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008) (quotations marks omitted). However, if the ALJ fails to address these factors in the opinion, a reviewing court cannot assess whether he assigned the proper weight to the treating physicians' opinions. *Scrogham*, 765 F.3d at 697.

In this case, the ALJ recognized that Dr. Kora was Pennington's treating physician. (Doc. No. 13 at 27). Dr. Kora treated Pennington on at least fourteen occasions between April

---

[2] Because both DIB and SSI regulations are identical, the Court will only refer to the DIB regulations found in 20 C.F.R. pt. 404 in this order.

20, 2010, and the March 2013 hearing. (Doc. No. 13 at 321-28, 368, 453-61, 540-44). Dr. Kora opined that the claimant's impairments were exacerbated by minimal exertion; lifting ten to fifteen pounds occasionally; lifting ten to fifteen pounds frequently; standing or walking for more than twenty minutes; and any exposure to extreme weather, extreme heat, extreme cold, dusts, and fumes. (Doc. No. 13 at 27-28, 511, 525-26). The ALJ indicated he gave Dr. Kora's opinion "only some weight" in making his RFC finding. (Doc. No. 13 at 28).[3]

Dr. Joshua Eskonen, a State agency medical consultant, opined that Pennington was limited to light work with occasional postural limitations; lifting or carrying twenty pounds occasionally, as opposed to Dr. Kora's limitation of ten pounds; lifting or carrying ten pounds frequently; and standing or walking for more than six hours in an eight hour day. (Doc. No. 13 at 27-28, 355-58, 511, 525-26). Dr. Eskonen further opined that Pennington must avoid concentrated exposure to extreme cold and heat; humidity; and fumes, odors, dusts, gases, and poorly ventilated areas. (Doc. No. 13 at 28, 355-58). In contrast, Dr. Kora opined that Pennington must avoid any exposure to extreme weather, extreme temperatures, dusts, and fumes. (Doc. No. 13 at 27-28, 511, 525-26). Another State agency medical consultant, Dr. J. Sands, reviewed the record and affirmed Dr. Eskonen's assessment. (Doc. No. 13 at 442). Neither Dr. Eskonen nor Dr. Sands treated or examined Pennington. (Doc. No. 22 at 10).

The ALJ gave the opinion of Dr. Eskonen, which was affirmed by Dr. Sands, "great weight" and the ALJ's RFC mirrors the limitations indicated by Dr. Eskonen. (Doc. No. 13 at 25, 28). When the ALJ included Dr. Eskonen's environmental and weather limitations in a

---

[3] The ALJ appropriately disregarded Dr. Kora's opinion that Pennington was permanently disabled, as it was a dispositive determination, and therefore reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(d)(1); *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000).

hypothetical question, the VE testified that Pennington could perform both his former job as a server as well as other jobs, such as order clerk and information clerk, despite those limitations. (Doc. No. 13 at 78). However, when Pennington's counsel asked the VE whether an individual with the environmental and weather limitations outlined by Dr. Kora would be able to perform any jobs, the VE testified that a person with those limitations "couldn't be in any type of work environment." (Doc. No. 13 at 79-80).

The ALJ indicated that he gave only some weight to Dr. Kora's opinion regarding environmental limitations because "a complete avoidance is not warranted due to [Pennington's] condition stabilizing after he stopped smoking and his December 2012 examination was relatively normal." (Doc. No. 13 at 28). The ALJ further found that Dr. Kora's opinion regarding Pennington's sitting, standing, and walking limitations was too limited based on Pennington's "conservative treatment for his degenerative disc disease and his relatively normal physical examinations to his back." (*Id.*). Pennington argues that the ALJ's rationale for giving Dr. Kora's opinion only some weight is conclusory, unsupported, and insufficient under the regulations.

The ALJ stated in his opinion that he "considered opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1527." (Doc. No. 13 at 25). However, the ALJ failed to discuss the factors in his opinion. While the regulations require only that the ALJ consider the section 404.1527 factors, case law requires that the ALJ at least minimally articulate his rationale, give a sound explanation for the weight assigned to the treating physician's opinion, and include at least a nominal discussion of the regulatory factors. *See* 20 C.F.R. § 404.1527(c)(2)-(5); *Scrogham*, 765 F.3d at 697-98*; Elder*, 529 F.3d at 415; *Minnick*, 775 F.3d at

7

938; *Roddy*, 705 F.3d at 636; *Jelinek*, 662 F.3d at 811. Such a discussion would have constituted a "logical bridge" from the evidence to the ALJ's conclusion, allowing this reviewing Court to assess the validity of the agency's final decision and afford Pennington a meaningful review. *See Giles*, 483 F.3d at 487.

The Commissioner cites *Henke v. Astrue*, arguing that the ALJ need not explicitly weigh every factor while discussing a decision on the weight to give a treating physician. 498 F. App'x 636, 640 n.3 (7th Cir. 2012). While case law does not demand a thorough discussion of each factor or even a discussion including all of the factors, it does require that the ALJ minimally articulate his rationale for the weight given to a treating physician based on the factors laid out in the regulations. *Scrogham*, 765 F.3d at 697-98.

In this case, the ALJ may have had a sound explanation for the weight he gave Dr. Kora's medical opinion, including an analysis of how the § 404.1527 factors weighed against Dr. Kora's opinion. However, he did not minimally articulate such a sound explanation, thus failing to provide the logical bridge necessary for this Court, with no medical expertise, to meaningfully review the weight given to the medical opinions.

The ALJ determined that Dr. Kora's sitting, standing, and walking limitations were too restrictive based on Pennington's "conservative treatment for his degenerative disc disease and his relatively normal physical examinations to his back." (Doc. No. 13 at 28). The ALJ further found that Dr. Kora's environmental and weather-related limitations were too restrictive based only on a single pulmonary examination the ALJ viewed as "relatively normal" and the ALJ's determination that Pennington's COPD had "stabilized." (*Id.*). The ALJ therefore gave Dr. Kora's opinion only some weight. (*Id.*).

In contrast, the ALJ gave Dr. Eskonen's opinion great weight. (*Id.*). However, Dr. Eskonen never examined Pennington and his "opinion" consisted of nothing more than filling out a check-box-style Physical Residual Functional Capacity Assessment form. (Doc. No. 13 at 355-58). Furthermore, Dr. Eskonen issued his opinion without the benefit of reviewing over a year's worth of medical records leading up to the hearing. Dr. Eskonen did not review medical records from the four examinations Dr. Kora conducted on Pennington between February 2012 and the March 2013 hearing date. Nor did Dr. Eskonen review Dr. Kora's Chronic Pulmonary Insufficiency RFC, which contained the limitations the ALJ determined were unwarranted. Nevertheless, the ALJ wholly incorporated Dr. Eskonen's limitations into his RFC at Step Four.

"The opinions of treating physicians are generally entitled to greater weight than those of examining physicians, and opinions of examining physicians are entitled to greater weight than those of non-examining physicians." *Wolf v. Colvin*, 2013 WL 3777200, at *10 (N.D. Ind. July 18, 2013) (citing 20 C.F.R. § 416.927(c)(1)-(2)). Therefore, this Court expects a sound explanation for the weight assigned to the medical opinions in a case such as this, in which Pennington's treating physician's opinion was given only some weight while the opinion of a non-examining State agency physician, who did not review the entire record, was given great weight.

The ALJ may have had a sound explanation for not giving Dr. Kora's opinion controlling weight, however, the ALJ did not minimally articulate such a sound explanation, including a discussion of the § 404.1527 factors. The ALJ's determination that a single examination by Dr. Kora was "relatively normal" and that Pennington's COPD, a progressive illness that worsens over time, had "stabilized" does not, alone, constitute a sound explanation for assigning Dr.

9

Kora's opinion regarding environmental irritant and weather limitations only some weight. Similarly, the ALJ's determination that Pennington's treatment for his degenerative disc disease was "conservative" and his back examinations were "relatively normal" does not, alone, constitute the sound explanation required to give a treating physician's opinion less than controlling weight. Hence, the ALJ failed to provide the logical bridge necessary for this Court, with no medical expertise, to meaningfully review the weight given to Dr. Kora's medical opinion. Therefore, the Court finds that the ALJ's weighing of Dr. Kora's medical opinion was not supported by substantial evidence and this matter requires remand so that the ALJ may properly weigh Dr. Kora's medical opinion.

      2.      <u>The ALJ's credibility assessment</u>

In assessing a claimant's subjective symptoms, particularly pain, the ALJ must first determine whether there is a medically determinable impairment that can be shown by acceptable medical evidence and can be reasonably expected to produce the claimant's pain or other symptoms. SSR 96-7p; *Scheck v. Barnhart*, 357 F.3d 697, 701 (7th Cir. 2004). Second, the ALJ must evaluate the intensity, persistence, and limiting effects of the impairment to determine the extent to which the symptoms limit the claimant's ability to work. *Id.* When a claimant's statements about the symptoms and limitations of their impairment are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the individual's statements based on consideration of the entire case record. SSR 96-7p; *see also Scheck*, 357 F.3d at 701. Because an ALJ is in a special position to hear, see, and assess witnesses, the ALJ's credibility determinations are given special deference and will only be overturned if they are patently wrong. *Bates v. Colvin*, 736 F.3d 1093, 1098 (7th Cir. 2013).

However, this Court must "examine whether the ALJ's determination was reasoned and supported." *Elder*, 529 F.3d at 413.

In this case, the ALJ found Pennington's allegations regarding the severity of his impairments not fully credible. The ALJ based his finding on: (1) Pennington's statements to Dr. Dean Shoucair, a State agency medical consultant, regarding his activities of daily living, which the ALJ found inconsistent with his alleged limitations; (2) Pennington's continued smoking, despite the recommendations by several physicians that he stop; and (3) the ALJ's determination that the treatment record was routine and conservative in nature.

Pennington first argues that the ALJ improperly interpreted the evidence regarding Pennington's activities of daily living. The ALJ observed that Pennington told Dr. Shoucair that he was capable of performing his activities of daily living. (Doc. No. 13 at 28, 351). The ALJ noted Pennington's report to Dr. Shoucair that he cooked, cleaned, shopped, drove, and lived by himself. (Doc. No. 13 at 28). The ALJ found that his ability to perform these activities on a regular basis weighed against the credibility of Pennington's allegations regarding the intensity and persistence of the symptoms. (*Id.*). Pennington argues that, while he can perform these activities, he testified that he can only do so with great struggle. For example, Pennington testified that showering is difficult because the moisture affects his breathing and that he has to take breaks while washing dishes because his "lungs start burning." (Doc. No. 13 at 55-56, 66).

When using reports on activities of daily living as a basis for a credibility determination, the ALJ must consider a claimant's limitations in performing household activities. *Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009). Courts have "repeatedly cautioned that a person's ability to perform daily activities, especially if that can be done only with significant limitations,

11

does not necessarily translate into an ability to work full-time." *Roddy*, 705 F.3d at 639.

The Commissioner argues that while the ALJ did not note Pennington's limitations in performing his daily activities when making the credibility determination, the ALJ did recognize these limitations elsewhere in his opinion. However, the fact that the ALJ noted Pennington's limitations in his recitation of the facts does not allow this Court to infer that he considered them in his credibility determination, as required. *Moss*, 555 F.3d at 562.

Pennington next argues that the ALJ improperly found that Pennington's continued smoking undermined his credibility. The ALJ stated in his opinion that "if the claimant's impairments were as severe and debilitating as he has alleged, then he would have followed his treating physician's orders by stopping smoking when ordered." (Doc. No. 13 at 29). Pennington argues that the ALJ's consideration of his smoking as a basis for a credibility finding is improper, citing *Shramek v. Apfel*, 226 F.3d 809 (7th Cir. 2000).

In *Shramek*, the court held that a claimant's failure to quit smoking is not a reasonable basis for an unfavorable credibility finding. *Id.* at 813. Here, the ALJ erred by relying on Pennington's failure to quit smoking, despite the urging of his physicians, as a basis for an adverse credibility finding. This error is all the more striking because Pennington did, in fact, quit smoking in August 2012, as the ALJ notes in his opinion. (Doc. No. 13 at 28).

The ALJ also based his credibility determination on his finding that the treatment record was routine and conservative in nature, a finding Pennington does not dispute. (Doc. No. 13 at 29). This Court notes that the ALJ's credibility determination is reviewed with deference and need not be flawless. *Simila v. Astrue*, 573 F.3d 503, 517 (7th Cir. 2009). However, the ALJ's failure to consider Pennington's limitations in carrying out his activities of daily living and the

12

ALJ's erroneous consideration of Pennington's smoking constitute serious flaws in his credibility determination.

Because this case is already being remanded, the Court need not reach any conclusions as to whether these flaws in the ALJ's credibility determination render it patently wrong. Nevertheless, on remand, the ALJ should take the opportunity to review the credibility determination and express a reasoned and supported determination based on the proper regulatory factors. *See Key v. Sullivan*, 925 F.2d 1056, 1061 (7th Cir. 1991) ("If an issue is left open after remand, the lower tribunal is free to decide it.").

### 3. The ALJ's hypothetical question to the VE.

Pennington next argues that the ALJ's hypothetical question to the VE was incomplete and did not account for the full extent of Pennington's limitations because of the ALJ's alleged errors in weighing the medical opinions and in evaluating Pennington's credibility. Because of those errors, Pennington argues, the VE's testimony regarding jobs available to Pennington was not a reasonable foundation for the ALJ's disability determination.

Because this Court has already determined that remand related to Pennington's RFC is proper, the Step Five analysis could change depending on the ALJ's new RFC determination. Therefore, the Court need not address Pennington's Step Five argument here.

### III. CONCLUSION

For the reasons stated above, the Court finds that (1) the ALJ's weighing of Dr. Kora's medical opinion was not supported by substantial evidence; (2) because this case is already being remanded, the Court need not reach any conclusions as to whether the flaws in the ALJ's credibility determination render it patently wrong; and (3) because this Court has already

13

determined that remand related to Pennington's RFC is proper and the Step Five analysis could change depending on the ALJ's new RFC determination, the court need not address Pennington's Step Five argument. Therefore, the Court now **GRANTS** Pennington's request to remand this case. (Doc. No. 16). This case is **REMANDED** to the Commissioner for further proceedings consistent with this opinion.

    **SO ORDERED.**

    Dated this 7th day of July, 2015.

                                                      S/Christopher A. Nuechterlein
                                                      Christopher A. Nuechterlein
                                                      United States Magistrate Judge